**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

STOCK PURSE TRADING LLC,
LISTON ASSOCIATES, INC. and,
CAROLE A. LISTON

Defendants,
_____/

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## I. INTRODUCTION

1. Defendants Stock Purse Trading, LLC ("Stock Purse") and Liston Associates, Inc. ("Liston Associates") (collectively, "SPT"), formerly headquartered in Palm Beach Gardens, Florida, and their owner, Carole A. Liston ("Liston") (collectively, "Defendants"), conducted a fraudulent securities offering by falsely promising to pay investors exorbitant monthly returns based on Liston's purported stock trading strategy and expertise.

2. From at least August 2020 through July 2024 (the "relevant period"), Defendants raised approximately $5.7 million from more than 200 investors nationwide, purportedly to fund Defendants' stock trading activities in violation of the anti-fraud provisions of the federal securities laws.

1

3. Liston falsely promised monthly returns ranging from 5% to 20% and claimed to double investors' money within 30 to 60 days. Liston also claimed that she could generate profits of 350% in one year by pooling investor funds in brokerage accounts and investment "funds" she managed.

4. To lure investors to invest in the investment opportunity, Liston touted her purported investment experience and success in trading for her own accounts, her expertise in investing in options, and proprietary trading algorithm for short selling stocks. Liston falsely told investors that SPT would pool investor funds to achieve better returns and misrepresented to investors the safety and security of her investment trading strategy. Liston also created false online account summaries showing outstanding fictitious returns, lulling investors who accessed their accounts through SPT's website.

5. In reality, Liston only used a small portion of investor funds to purchase and trade securities and, when she did, her trading produced significant losses. Liston misappropriated at least $450,000 of investor funds for her personal benefit, and used at least $3.9 million in investor funds to make Ponzi-like distributions to SPT investors.

6. By engaging in the conduct alleged in this Complaint, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Exchange Act Rule l0b-5 [17 C.F.R. § 240.10b-5]. Liston also violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(1) and (2)].

7. Unless enjoined, Defendants will continue to violate the federal securities laws. Among other relief, the SEC seeks permanent injunctions, disgorgement with prejudgment interest and civil penalties against Defendants.

## II. DEFENDANTS

8. Liston, age 61, resides in Yonkers, New York. Liston is the founder, president, and director of SPT and Liston Associates, and controls Stock Purse's and Liston Associates' bank accounts and brokerage accounts, and all key aspects of their business operations. Liston has never been registered with the Commission.

9. Stock Purse was formed in March 2022, as a Florida corporation with its principal place of business in Palm Beach Gardens, Florida. Liston is Stock Purse's founder and Chief Executive Officer. Stock Purse's investment offerings have never been registered with the Commission in any capacity. Stock Purse was administratively dissolved in September 2024.

10. Liston Associates was formed in January 2022 as a Florida corporation with its principal place of business in Palm Beach Gardens, Florida. Liston Associates was purportedly in the business of providing IT services and Liston served as its Chief Executive Officer. Liston Associates has never been registered with the Commission in any capacity. It was administratively dissolved in September 2024.

## III. JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 21(d), 21(e), and Section 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa] and Sections 209(d)-(e) and 214(a) of the Advisers Act [15 U.S.C. §§ 80b-9(d)-(e) and 80b-14(a)].

12. The Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because many of the Defendants' acts and transactions constituting violations of the Securities Act, the Exchange Act and the Advisers Act, occurred in this District. Further: (a) Stock Purse and Liston Associates—the companies through which Liston defrauded

investors—had their principal places of business in this District, (b) Liston resided in this District during most of the relevant period, and (c) some SPT investors reside in this District.

13. In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV. FACTUAL ALLEGATIONS

### A. Defendants' Investment Programs and Trading Strategy

14. From at least August 2020, Liston, and commencing January 2022, Liston, individually and through SPT, began soliciting investors nationwide to invest with her, promising significant returns based on her trading strategy. Liston, who claimed to have a background in computer programming and technical development, told investors she developed a proprietary trading algorithm for short selling which allowed her to generate better returns than other traders and make money in times of market volatility.

15. According to Liston, the proprietary trading algorithm made use of charts which track the trend of the market and identify the trend of a stock. Liston touted that her expertise and use of her proprietary algorithm generated high returns from 5% - 20% monthly to a 100% return within 30-60 days. Liston boasted that she could double investor money and claimed that she could generate profits of 350% in one year by pooling investor funds in brokerage accounts and investment funds under her management.

16. Liston's purported trading strategy as described to investors involved pooling investor funds, which she claimed allowed her and SPT to achieve greater returns for investors as a pooled stock or stock options investment fund.

4

17. Liston pitched three SPT programs: (1) the "Growth Fund," a long-term individual account investment which allowed for the regular withdrawal of funds; (2) the "Income Fund," a shorter-term pooled investment which offered payment of monthly returns; and (3) the "Family Fund," a pooled investment which offered a "double your money back" promise in six months. The "Growth Fund" and the "Income Fund" purportedly paid monthly returns between 5% and 15%.

18. To participate in the investment opportunity, investors were instructed to submit an online form via SPT's website, "Stockpursetrading.com." Once approved, investors were provided with a personalized login information where they had to agree to SPT's "Terms & Conditions" on SPT's website. After agreeing to the Terms & Conditions, investors completed SPT investment forms and were sent wire instructions to wire their investment to SPT.

19. Defendants promised investors that SPT would pay back their principal investments, along with profits generated by her successful trading. Liston told investors that they could withdraw investment profits SPT made on their behalf at any time upon completion of a request submitted via the SPT website. Liston also told investors that she would take a 5% fee on every investor's withdrawal of profits.

20. The amounts invested by investors varied from a few thousand dollars to hundreds of thousands of dollars. Early during the relevant period, Liston told investors to remit wires for investment to Liston's personal bank account. In at least one instance, Liston told an investor to describe the wire as a "loan" so the wire would not be flagged by the bank.

21. Liston identified investors through friends, family and word-of-mouth referrals such as through real estate networks, multi-level marketing seminars, and church. Liston pitched the investment opportunity to investors in person and via telephone.

22. During the relevant period, Defendants raised at least $5.7 million from 200 investors nationwide to purportedly fund their trading activities on behalf of investors.

### B. Liston Acted as the Investment Adviser to Investors

23. Investors who sent SPT and Liston funds did not exercise any control or authority over the funds they remitted to SPT and/or Liston, or the securities investments made on their behalf. Instead, as SPT's principal and CEO, Liston had discretionary authority over investors' funds, she decided how to invest investors' funds, which securities and trading strategies to use. Liston received compensation for her investment advisory services. Accordingly, Liston acted as "investment adviser", as that term is defined in Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

24. Liston used interstate commerce when she offered her investment advisory services by, among other things, promoting investments in SPT through Defendants' website and telephone calls with investors and prospective investors.

### C. Defendants' Misrepresentations and Omissions to Investors

25. Liston and SPT through Liston made misrepresentations and omissions to investors concerning, among other things, Liston's purportedly successful trading strategy, the source of investor returns, and the use of investor funds.

*(a) Misrepresentations and Material Omissions About the Success of Liston's Trading Strategy*

26. During the relevant period, Defendants made misrepresentations and omissions to investors and prospective investors about the purported success of Liston's expertise, proprietary trading algorithm and trading strategy.

6

27. For example, Liston told Investor 1 that Liston's proprietary trading algorithm allowed Liston to do better than others and that Liston had never lost anyone's investment. Based on this information, Investor 1 invested $100,000 with Defendants.

28. Liston told Investor 2 that Liston's investment strategy goes against traditional norms and that Liston could turn a $400,000 investment into $1 million within a year. Based on this information, Investor 2 invested $450,000 with Defendants.

29. During a three-way telephone call with Liston, Investor 3 and Investor 3's brother, Liston claimed that she could double an investor's investment, and assured Investor 3 that his investment funds were safe and returns "guaranteed." Based on this information, Investor 3 invested over $250,000 with Defendants.

30. Liston's claims of her trading expertise and success were false. SPT's brokerage records during the relevant period show that, in fact, Liston invested less than $1.7 million of the $5.7 million she raised from investors, and she lost most of the funds she traded in SPT's brokerage account. SPT's brokerage records also show that SPT experienced net losses of more than $230,000 over the relevant period in connection with her trading options on securities and engaging in short sales of securities.

31. Liston hid SPT's trading losses from existing investors while simultaneously boasting of her investment savvy and recruiting new investors based on false claims on positive investment returns.

32. Liston directed existing investors to view their account summaries on SPT's website. The account summary displayed, among other things, a respective investor's initial investment, a supposed current – but fictitious – account value, and correspondingly fake percentages of gains or losses. For example, on January 3, 2023, a screenshot from one investor's

account summary showed a principal investment amount of $395,000, an account value of $981,000, and a gain of 148% (representing the purported profit over the principal amount invested).

33. The $981,000 purported balance for this investor was fictitious and significantly higher than the entire value of SPT's brokerage account. SPT's brokerage records for December 2022 and January 2023 show SPT's account balances totaling less than $2,000 combined. Despite knowing that SPT was not generating profits but, instead, experiencing significant trading losses, Liston, the person with ultimate control over SPT's website, continued to post fictitious account balances for investor account summaries for over a year, lulling investors into believing that Defendants were generating promised returns.

### (b) Misrepresentations and Material Omissions About the Safety of Investors' Funds and Use of Margin in SPT's Trading Strategy

34. Defendants repeatedly touted Liston's experience in stock trading and purported positive track record as well as the ability of investors to withdraw their principal to convince investors to invest in the investment opportunity.

35. Despite Defendants' assurances of the safety of her trading strategy, Liston often used investor funds to engage in highly speculative and risky trading strategies, including trading on margin, without disclosing the strategy – or its risks – to investors.

36. Margin trading refers to the purchase of stock (or other security) by borrowing a portion of the sum to execute the purchase from the broker. If an investor's equity in his account falls below a certain required maintenance margin (such as 50%), the broker issues a "margin call," which requires the investor to either liquidate stock or to add cash to the investor's account. If the investor does not answer a margin call, the broker has the right to sell the investor's securities until

8

the account reaches the maintenance margin. Thus, margin trading may expose an investor to the risk of losses in excess of the amount of their initial investment.

37.     Although SPT's website mentioned the word "margin," the descriptions provided were vague and related to a business venture's operating margin, rather than the use of margin as a trading strategy. Specifically, SPT's website explained that "margins measure efficiency," and that "[t]he higher the operating margin, the more profitable a company's core business is per dollar." Defendants did not define margin as the use of existing account assets as leverage, and wholly failed to disclose that SPT's trading strategy included leveraging investor funds.

38.     Nor did Liston or SPT's website describe how margin fit into SPT's strategy, the risks associated with margin, or how the use of margin impacted investors' fund liquidity and investors' ability to withdraw funds.

39.     SPT investors were notified of Defendants' use of margin for the first time in the summer of 2023, *after* Defendants failed to return to investors their principal investments, when Defendants posted a notice on SPT's website stating that the "brokerage account is in a deficit also known as margin."

### (c) Misrepresentations and Material Omissions About the Use of Investors' Funds

40.     During the relevant period, Defendants raised more than $5.7 million from investors, purportedly for pooling those funds in SPT's brokerage account and generating profits from Defendants' proprietary trading algorithm. However, Defendants deposited less than $1.7 million of those funds for trading in SPT's brokerage account.

41.     The balance of the funds raised from investors were not used for trading, but rather, misused by Defendants for other purposes. Defendants diverted at least $3.9 million of investor funds to make Ponzi-like payments to investors. Because SPT lost money on trades and did not

9

generate sufficient profits to pay the promised investor returns, Defendants used new investor funds to pay fictitious returns and to cover withdrawal requests.

42. Defendants also used investor funds to make loans to other investors and directed payments to real estate entities, unrelated to SPT's investment business.

43. Additionally, Liston misappropriated more than $450,000 in payments for personal items including real estate purchases, car purchases, hotels, clothing and luxury gifts, credit cards, and a cruise vacation with friends.

44. When Liston promised investors that they could make regular withdrawals of profits from their investor accounts, Liston failed to disclose her misuse of investor funds and failure to invest the majority of funds to conduct trading activities, or her use of investor funds to pay "returns" to other investors, all of which impacted investors' ability to withdraw purported profits from their accounts.

45. Defendants' misrepresentations and omissions to investors regarding the success of Defendants' trading strategy, the source of investor returns, and use of investor funds were material. Reasonable investors would find it important that Defendants were not engaging in a safe trading strategy but rather were undertaking a risky trading strategy involving margin. Reasonable investors would also find it important that, rather than investing all of their funds, Defendants were using some of their money for other purposes.

46. Defendants knew or were reckless in not knowing that the representations they made to investors about their purported successful trading strategy were false, misleading, and omitted material information. Defendants also knew or were reckless in not knowing that the representations they made to investors about the source of their returns and use of funds were false, misleading, and omitted material information.

### III.     CLAIMS FOR RELIEF

### COUNT I

### Violations of Section 17(a)(1) of the Securities Act
### (Against all Defendants)

47.     The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

48.     From August 2020 through July 2024, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, directly or indirectly employed devices, schemes, or artifices to defraud.

49.     By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### COUNT II

### Violations of Section 17(a)(2) of the Securities Act
### (Against all Defendants)

50.     The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

51.     From August 2020 through July 2024, Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

52.     By reason of the foregoing, the Defendants violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT III

### Violations of Section 17(a)(3) of the Securities Act
### (Against all Defendants)

53. The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

54. From August 2020 through July 2024, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

55. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV
### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act
### (Against all Defendants)

56. The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

57. From August 2020 through July 2024, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

58. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT V

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act
**(Against all Defendants)**

59. The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

60. From August 2020 through July 2024, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

61. By reason of the foregoing, the Defendants have violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)] thereunder.

## COUNT VI

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act
**(Against all Defendants)**

62. The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

63. From August 2020 through July 2024, Defendants, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

64. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## COUNT VII

### Violations of Section 206(1) of the Advisers Act
### (Against Liston)

65. The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

66. From August 2020 through July 2024, Liston, for compensation, engaged in the business of directly advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. Liston was therefore an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

67. Liston, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly knowingly or recklessly employed a device, scheme, or artifice to defraud one or more clients or prospective clients.

68. By reason of the foregoing, Liston violated and, unless enjoined, is reasonably likely to continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT VIII

### Violations of Section 206(2) of the Advisers Act
### (Against Liston)

69. The Commission adopts by reference paragraphs 1 through 46 of this Complaint.

70. From August 2020 through July 2024, Liston, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective clients.

71. By reason of the foregoing, Liston violated and, unless enjoined, is reasonably likely to continue to violate Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

### IV. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

#### A. Permanent Injunction Against Defendants

Issue a Permanent Injunction restraining and enjoining Defendants from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and further enjoining Defendant Liston from violating Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

#### B. Disgorgement and Prejudgment Interest

Issue an Order directing Stock Purse, Liston Associates, and Liston to disgorge all ill-gotten gains or proceeds received within the applicable statute of limitations, with prejudgment interest thereon, resulting from the acts and/or courses of conduct alleged in this Complaint and finding (i) Defendants Stock Purse and (ii) Defendants Liston Associations and Liston, jointly and severally liable for disgorgement ordered against each of them, respectively.

#### C. Civil Penalty

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78d(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C.§ 80b-9(e)].

#### D. Further Relief

Grant such other and further relief as may be necessary and appropriate.

#### E. Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or

to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: August __, 2025                                              Respectfully submitted,

                                                                                          _____
                                                                                          Pascale Guerrier
                                                                                          Senior Trial Counsel
                                                                                          Florida Bar No. 22590
                                                                                          Direct Dial: (305) 982-6301
                                                                                          Email: guerrierp@sec.gov

                                                                                          Attorney for Plaintiff
                                                                                          **SECURITIES AND EXCHANGE COMMISSION**
                                                                                          801 Brickell Avenue, Suite 1950
                                                                                          Miami, Florida 33131